FIRESTONE GREENBERGER PLLC
*Attorneys for Robert G. Mackie a/k/a Bob Mackie*
Jordan Greenberger (jg@firegreenlaw.com)
Michael J. Firestone (mjf@firegreenlaw.com)
Callie J. Kramsky (ck@firegreenlaw.com)
104 West 40th Street, 4th Floor
New York, NY 10018
(212) 597-2255

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| ROBERT G. MACKIE a/k/a BOB MACKIE, | |
|---|---|
| Plaintiff, | Case No.  25 – cv – 8984 |
| -against- | **COMPLAINT** |
| PENNEY OPCO LLC d/b/a JCPENNEY, | JURY TRIAL DEMANDED |
| Defendant. | |

Plaintiff Robert G. Mackie a/k/a Bob Mackie ("Mr. Mackie" or "Plaintiff"), for his complaint against defendant Penney OpCo LLC d/b/a JCPenney ("JCPenney" or "Defendant"), pleads the following:

**Preliminary Statement**

1. JCPenney is promoting, advertising, distributing, and selling various goods bearing Mr. Mackie's name and iconic signature, including without limitation in connection with an apparel collection that JCPenney launched in September 2025 and that it refers to as *Mackie: Bob Mackie*. However, Mr. Mackie has NOT:

    a. Designed, let alone been asked to design, any of the items of apparel that JCPenney is advertising, distributing and selling;

    b. Approved, let alone been asked to approve, any of the items of apparel that JCPenney is advertising, distributing and selling;

1

  c. Approved, let alone been asked to approve, JCPenney's use of his name, signature, image, or likeness; or

  d. Collaborated with, let alone been asked to collaborate with, JCPenney in connection with the collection.

 2. Astonishingly, Mr. Mackie was not even aware of JCPenney's usage of his name, signature, and likeness until after JCPenney issued a press-release concerning the collection and various members of the press contacted Mr. Mackie asking for his comment about the supposed collaboration between him and JCPenney.

 3. Mr. Mackie did not comment to the press. Instead, he sent a cease-and-desist letter to JCPenney. But JCPenney did not comply with Mr. Mackie's demands. Accordingly, Mr. Mackie brings this lawsuit.

 4. To be clear, Mr. Mackie has not collaborated with JCPenney in connection with the *Mackie: Bob Mackie* collection or any other items of apparel at any time. Consumers who purchase any items from JCPenney's *Mackie: Bob Mackie* collection are not buying clothing designed or approved by Mr. Mackie. JCPenney is wrongfully exploiting and seeking to capitalize upon Mr. Mackie's name, signature, and likeness.

## Parties

 5. Mr. Mackie is an adult resident of the State of California.

 6. JCPenney is a retailer that sells apparel and other consumer products through its online store and physical locations across the United States. On information and belief, JCPenney:

  a. is a limited liability company organized under the laws of the state of Virginia;

  b. has its principal office located in Texas;

   c. is authorized to do business in New York;

   d. owns and operates the retail website https://www.jcpenney.com (the "Website"); and

   e. operates various physical stores in the State of New York, including without limitation one or more retail stores in this district (e.g., in the Bronx) and elsewhere in New York City (e.g., Brooklyn).

## Jurisdiction And Venue

7. This action arises under the Lanham Act (15 U.S.C. § 1051 *et seq*.), and therefore the Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.

8. The court has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) - (c) because, *inter alia*, the events giving rise to the claims occurred in this district, JCPenney infringed Mr. Mackie's in this district, and JCPenney is subject to personal jurisdiction in this district.

10. On information and belief, the Court has personal jurisdiction over JCPenney because JCPenney is authorized to do business in New York, it has a regular presence in New York, it has availed itself of the presence of doing business in New York (including without limitation in relation to having various physical retail locations in New York and selling goods to consumers in New York), and its infringing acts have occurred in New York.

## Facts Applicable To All Claims

11. Mr. Mackie is an internationally famed costume designer and fashion designer, whose career has spanned over six decades. He is an icon in the fashion industry.

12. Mr. Mackie has won, among other awards, a Tony award, multiple Emmy awards, the Costume Designers Guild Career Achievement Award, and a lifetime achievement award from the Council of Fashion Designers of America (CFDA). He has also been nominated for multiple Academy Awards.

13. Mr. Mackie designed costumes for numerous shows (television and stage) and for countless celebrities, including Cher, Carol Burnett, Mitzi Gaynor, Tina Turner, and Bette Midler.

14. A newer generation of celebrities has also embraced wearing pieces designed by Mr. Mackie. His pieces have been worn by the artists Pink, Miley Cyrus, Zendaya, and Taylor Swift. Indeed, Taylor Swift wears a piece designed by Mr. Mackie, for the long-running Las Vegas revue *Jubilee!*, on the cover of Ms. Swift's recently released album *The Life of a Showgirl*.

15. Mr. Mackie was also the subject of a documentary released in 2024 entitled *Bob Mackie: Naked Illusion*.

16. On or about September 11, 2025, JCPenney issued a press release concerning a new line of clothing bearing Mr. Mackie's name, signature and likeness (the "Collection") that JCPenney was going to begin advertising, marketing and selling online and in physical retail locations. Annexed hereto as Exhibit 1 is a true and correct copy of the press release.

17. Along with the press release, JCPenney issued a "Lookbook" relating to the Collection. Annexed hereto as Exhibit 2 is a true and correct copy of the Lookbook. Page 2 of the Lookbook states in pertinent part: "For decades, award-winning costume and fashion designer Bob Mackie has dressed some of the world's most iconic women. His use of vibrant colors, fabrics and exquisite details are legendary. Now with this exclusive Bob Mackie X JCPenney collection—available for a limited time—women everywhere can dress like an icon and dare to be noticed. Yes, JCPenney."

18. On information and belief, on the same day it issued the press release and Lookbook (September 11, 2025) JCPenney launched the Collection and began selling the Collection both online and in stores, including without limitation selling items from the Collection to consumers in New York and this district.

19. Below is a screenshot from the website https://www.jcpenney.com/g/brands/bob-mackie?id=cat11100024195, showing JCPenney's offering of the Collection online:



20. In addition to the press release, Lookbook and Website, Mr. Mackie's name, signature and likeness appears on both physical pieces in the Collection and in-store signage. Below are examples (photographs taken on or about October 18, 2025, at the JCPenney at the Gateway Center mall in Brooklyn):



21.     As a result of JCPenney's press release and publication of the Lookbook, various news organizations published reports about the Collection.

22.     For example, an article entitled "Bob Mackie teams up with JCPenney on a showgirl-worthy line of under $250 looks" was published by Page Six (https://pagesix.com/2025/09/11/style/bob-mackie-collaborated-with-jcpenney-on-an-under-250-collection/).

23.     As another example, an article entitled "Unleash your inner showgirl! Shop Bob Mackie x JCPenney sequin dresses, glam gowns and more," with the sub-heading "JCPenney and legendary designer Bob Mackie just launched a Taylor Swift-inspired collection for fall,"

was published by USA Today (https://www.usatoday.com/story/shopping/2025/09/11/new-jcpenney-bob-mackie-sequin-dresses-gowns/86073121007/)

24. As another example, an article entitled "JCPenney and Designer Bob Mackie Sprinkle Showgirl Magic into Their New Fashion Collection" was published by People (https://people.com/jcpenney-costumer-bob-mackie-sprinkle-showgirl-magic-into-new-fashion-collection-11807686). The article includes a picture of Mr. Mackie next to a picture that appears to be from the Lookbook with the caption, "Bob Mackie collaborates with JCPenney on exclusive collection," along with a bullet point under the heading "NEED TO KNOW" that states "Fashion designer Bob Mackie launched an exclusive collection with JCPenney inspired by an uptick in showgirl-inspired glamour."

25. On information and belief, JCPenney timed the release of the Collection so that it was available to consumers concurrent with Taylor Swift marketing the release of her new album, including certain versions of the album cover that depict Ms. Swift wearing a piece designed by Mr. Mackie.

26. Mr. Mackie, however, did not design any such clothing for JCPenney.

27. Mr. Mackie did not "team up" with JCPenney, and he and JCPenney have not "launched a Taylor Swift-inspired collection for fall" or otherwise collaborated.

28. Nor has Mr. Mackie personally authorized JCPenney to use his name, signature, image or likeness in connection with the Collection and related marketing materials.

29. Mr. Mackie has not been asked by JCPenney to design any pieces related to the Collection.

30. Mr. Mackie has not designed any pieces related to the Collection.

31. Mr. Mackie has not approved the design of any pieces related to the Collection.

32. Mr. Mackie was not asked by JCPenney whether it had his permission to use his name, signature, image or likeness in connection with the Collection.

33. If he had been asked by JCPenney (or anyone else), Mr. Mackie would not have designed or approved any items of apparel for JCPenney, and he would not have granted permission for JCPenney to use his name, signature, image or likeness in connection with the Collection, or any other goods or services, due to Mr. Mackie's legitimate concerns that doing so would diminish the commercial value of his name, signature and likeness and the goodwill associated with him. Mr. Mackie recalls that when the American designer Halston entered into a licensing agreement with JCPenney in or about the early 1980s, Halston's brand was damaged; high-end fashion retailers stopped carrying his clothing line because of Halston's association with JCPenney, a lower-priced mass-market retail chain store.

34. Mr. Mackie was not aware of the Collection, or any purported collaboration between him and JCPenney, until September 11, 2025, when he was contacted by various members of the press.

35. JCPenney's usage of Mr. Mackie's name, signature, image and/or likeness in connection with the Collection was and is wholly unauthorized by Mr. Mackie.

36. On or about September 15, 2025, Mr. Mackie (though his counsel) sent JCPenney a cease-and-desist letter that included various demands. On information and belief, JCPenney received the cease-and-desist letter.

37. JCPenney, however, has not ceased exploiting Mr. Mackie's name, signature, and likeness and it has not otherwise complied with Mr. Mackie's demands. Instead, JCPenney continues to offer the Collection for sale both online and in-store, and it has also started offering the Collection at various discounted prices (e.g., 25% off).

38. On information and belief, JCPenney contracted with an entity named Bob Mackie Design Group Ltd. ("BMDG"), or one of its affiliates, in relation to the Collection. Despite Mr. Mackie's request for a copy of any such contract, BMDG has not provided him with a copy.

39. Mr. Mackie is a minority shareholder of BMDG, and he is also on BMDG's board of directors. BMDG's principal place of business is in this district.

40. BMDG's only other shareholder and director is non-party Marc Schwartz. In addition to owning a majority of BMDG's stock, Mr. Schwartz is BMDG's chief operating officer and general counsel.

41. However, neither BMDG nor Mr. Schwartz were authorized to license Mr. Mackie's name, signature, image, or likeness in connection with the Collection.

42. Similarly, even to the extent that BMDG has rights in any trademarks that incorporate Mr. Mackie's name, signature or likeness, neither BMDG nor Mr. Schwartz were authorized to license such trademarks in relation of the Collection.

43. BMDG's bylaws provide that BMDG's board manages and controls the business and affairs of BMDG and that the board acts by consent of a majority of directors. The only members of the BMDG board are Mr. Mackie and Mr. Schwartz; thus, they must both agree for the board to act. As a material contract, BMDG was required as matter of law to submit any contract between itself and JCPenney to BMDG's board of directors for approval. In other words, as a matter of corporate governance, any contract between BMDG and JCPenney required approval of BMDG's board of directors. However, no board meeting was ever called to vote on any such contract, a majority of BMDG's board of directors did not otherwise approve such contract, and Mr. Mackie would not have approved any such contract if he had been asked.

Indeed, Mr. Mackie recalls previously telling Mr. Schwartz that he did not want to have happen to him what had happened to Halston by affiliating his name with JCPenney.

44. On information and belief, Mr. Schwartz was aware that Mr. Mackie did not approve doing a deal with JCPenney.

45. Additionally, out of respect for Mr. Mackie's legacy, BMDG is not authorized, absent Mr. Mackie's permission, to license either (a) Mr. Mackie's name, image, signature or likeness; or (b) any trademarks in which BMDG might have rights and that incorporate Mr. Mackie's name, signature or likeness (in whole or in part, and any combinations thereof). But BMDG did not obtain – let alone ask for – Mr. Mackie's permission in connection with the Collection, and if Mr. Mackie had been asked he would not have granted such permission for JCPenney as a licensee.

46. Additionally, any permission that BMDG may previously have had to use Mr. Mackie's name, signature and likeness – for both trademark and non-trademark purposes – was revoked by Mr. Mackie prior to JCPenney publicly launching the Collection.

47. BMDG was aware of such revocation as a result of: (i) a recently terminated arbitration; (ii) Mr. Mackie's revocation in or about early 2025 of a previously granted power of attorney to Mr. Schwartz; and (iii) Mr. Mackie's July 2025 demands to BMDG that it withdraw a pending application for federal trademark registration that is premised upon one or more forgeries of Mr. Mackie's signature (U.S. Serial Number 99205718).

48. As to the pending trademark application for the mark BOB MACKIE (Serial No. 99205718), Mr. Mackie did not consent to the use of his name in connection with the subject trademark application and by letter dated July 17, 2025, Mr. Mackie (though counsel) explicitly advised BMDG: "For the avoidance of doubt, Mr. Mackie has revoked any and all consent

10

relating to the use of his name by BMDG, BMDG's affiliates, parents, subsidiaries, predecessors, successors and assigns, including without limitation revoking any such consent to use his name in relation to the registration of a purported trademark in any and all classes of goods/services."

49. Mr. Mackie did not design the Collection; and he does not intend to design any apparel for JCPenney.

50. Mr. Mackie has not "teamed up" or collaborated with JCPenney in designing the Collection, as reported by the press. Nothing could be further from the truth.

51. Any communications suggesting that Mr. Mackie designed or approved the Collection is false and deceptive, harms Mr. Mackie, and harms consumers.

## COUNT I – FALSE ASSOCIATION/ENDORSEMENT

*Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)(1))*

52. Mr. Mackie repeats and re-alleges paragraphs 1 through 51 herein.

53. JCPenney is wrongly seeking to profit off the name and legacy of Mr. Mackie, one of the foremost costume and fashion designers of the last sixty years, by falsely implying that its new apparel collection is designed or endorsed by, or associated in some way with, Mr. Mackie. Nothing could be further from the truth, and as a national retailer JCPenney should know better.

54. Mr. Mackie did not design the Collection or any other items for JCPenney.

55. Mr. Mackie did not approve designs for the Collection.

56. Mr. Mackie did not sponsor the Collection or any other items for JCPenney.

57. Mr. Mackie did not and does not approve the Collection.

58. The Collection does not otherwise originate with Mr. Mackie.

11

59. Mr. Mackie is not connected with the Collection, other than a company of which he is a minority shareholder and board member (BMDG) may have improperly "licensed" Mr. Mackie's name, signature and likeness to JCPenney.

60. JCPenney did not ask Mr. Mackie to design or approve the Collection.

61. JCPenney's communications concerning the Collection, including without limitation the Website, its press release announcing the launch of the Collection, the related Lookbook, the hangtags on articles of apparel, and JCPenney's in-store signage, are likely to cause consumers to believe that Mr. Mackie endorsed, sponsored or approved the Collection.

62. JCPenny's use of Mr. Mackie's persona in connection with and on the Collection, including without limitation on JCPenney's Website, on labels and hangtags for the Collection, and on in-store signage, is likely to confuse consumers to think that Mr. Mackie endorsed, sponsored, or approved the Collection.

63. JCPenney's aforesaid conduct is exceptional, and has caused harm to Mr. Mackie, in an amount to be determined.

## COUNT II – FALSE ADVERTISING

*Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a))*

64. Mr. Mackie repeats and re-alleges paragraphs 1 through 63 herein.

65. JCPenney's promotions, advertisements and marketing materials concerning the Collection and Mr. Mackie were and are false.

66. JCPenney's subject communications misrepresent the nature, characteristics, and qualities of the Collection because Mr. Mackie did not design or approve the design of the Collection or any other goods or services offered by JCPenney.

67. JCPenney's subject communications misrepresent the nature, characteristics, and qualities of the Collection because BMDG, absent Mr. Mackie's notice and consent, was not authorized to design or approve the design of the Collection or any other goods or services offered by JCPenney.

68. JCPenney's press release, its "Lookbook, its Website, its in-store promotions and signage, and JCPenney's other marketing materials and communications concerning the Collection, deceived or had the tendency to deceive a substantial segment of JCPenney's audience and such deception was material.

69. JCPenney's subject communications were commercial in nature, and JCPenney caused the communications to enter interstate commerce.

70. JCPenney's various false and deceptive communications have caused injury to Mr. Mackie, including without limitation by lessening the goodwill associated with Mr. Mackie.

71. JCPenney's aforesaid conduct is exceptional.

## COUNT III – VIOLATION OF THE CALIFORNIA RIGHT OF PUBLICITY

*California Civil Code § 3344*

72. Mr. Mackie repeats and re-alleges paragraphs 1 through 71 herein.

73. Mr. Mackie is a California resident.

74. Mr. Mackie's name, signature, image and likeness have commercial value.

75. JCPenney is knowingly using Mr. Mackie's identity in connection with the Collection for JCPenney's commercial advantage.

76. JCPenney is not using Mr. Mackie's identity in connection with any news, public affairs, or sports broadcast or account, or any political campaign.

77. JCPenney lacks consent from Mr. Mackie to use his name, signature or likeness for any purpose, manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services.

78. If JCPenney purportedly obtained such consent from BMDG, BMDG did not have such rights to grant to JCPenney.

79. JCPenney's use of Mr. Mackie's name, signature and likeness is directly connected to a commercial purpose: the sale of items of apparel (the Collection) through JCPenney's Website and at various physical retail locations throughout the country.

80. JCPenney's aforesaid conduct has caused harm and injury to Mr. Mackie.

## COUNT IV – DECEPTIVE CONSUMER PRACTICES UNDER NEW YORK LAW

*New York General Business Law §§ 349-350.*

81. Mr. Mackie repeats and re-alleges paragraphs 1 through 80 herein.

82. JCPenney is engaged in consumer-oriented conduct in the State of New York: the promotion, advertising, marketing, distribution and sale of items of apparel both on the Website and at its physical retail locations, including without limitation within this district.

83. JCPenney is falsely and deceptively misleading New York consumers into believing that Mr. Mackie designed and/or approved designs for the Collection.

84. A reasonable consumer acting reasonably under the circumstances is likely to believe that Mr. Mackie designed and/or approved the Collection, even though Mr. Mackie did not do so.

85. Additionally, consumers who purchase items from the Collection are likely to expect a certain level of quality when purchasing items related to Mr. Mackie, and they are

harmed by JCPenney's conduct because on information and belief the Collection is of an inferior quality to anything that Mr. Mackie would have designed or approved.

86. JCPenney's aforesaid conduct has caused harm and injury to Mr. Mackie, and on information and belief to the consuming public.

WHEREFORE Mr. Mackie demands a judgment in his favor, and against JCPenney:

A. Permanently enjoining JCPenney, its officers, directors, members, agents, employees, and all persons in active concert or participation with any of them, from (i) using Mr. Mackie's name, signature, image, and likeness, including without limitation Mr. Mackie's name and signature in connection with the Collection and in connection with any other goods or services; (ii) manufacturing, transporting, promoting, importing, advertising, publicizing, distributing, offering for sale, or selling nay goods using Mr. Mackie's name, signature, image or likeness, or any other mark, name, symbol, or logo that incorporates or is confusingly similar to Mr. Mackie's name, signature, image or likeness; and (iii) falsely implying Mr. Mackie's endorsement or sponsorship of JCPenney's goods or services, or engaging in any act or series of acts which, either alone or in combination, interferes with or injures the goodwill associated with Mr. Mackie;

B. Awarding Mr. Mackie a monetary judgment against JCPenney, including without limitation in an amount no less than JCPenney's profits, plus Mr. Mackie's actual damages, plus Mr. Mackie's reasonable corrective advertising costs to counteract JCPenney's false communications, and for all other monetary remedies available under the Lanham Act (15 U.S.C. §§ 1117 and 1125(a)) and/or under relevant state common or statutory law (California Civil Code § 3344; N.Y. General Business Law § 349(h)), which may include treble damages, an increase of

JCPenney's profits by any amount, statutory damages, and/or punitive damages, in an amount to be determined;

  C. To remedy the consumer confusion caused by JCPenney's conduct, ordering JCPenney to publish and distribute corrective advertising and a public apology to Mr. Mackie, and to notify purchasers of the Collection that Mr. Mackie did not design or authorize the design of any pieces in the Collection and requiring JCPenney to offer a full refund to anyone who purchased items from the Collection;

  D. Awarding Mr. Mackie his costs, disbursements, and fees, including without limitation Mr. Mackie's attorney's fees (17 U.S.C. § 1117(a); California Civil Code § 3344(a); N.Y. Gen. Bus. Law § 349(h));

  E. Awarding Mr. Mackie pre-judgment interest;

  F. Granting Mr. Mackie such other and further relief as the Court deems just and proper.

**REQUEST FOR JURY TRIAL**

Mr. Mackie requests a jury trial on all the issues so triable. This request is without prejudice to, or waiver of, Mr. Mackie's right to move for judgment on all issues that may be decided by the Court.

Dated: October 29, 2025
       New York, NY

                              FIRESTONE GREENBERGER PLLC
                              *Attorneys for Robert G. Mackie a/k/a Bob Mackie*

                              /s/ Jordan Greenberger
                              Jordan Greenberger (jg@firegreenlaw.com)
                              Michael J. Firestone (mjf@firegreenlaw.com)
                              Callie J. Kramsky (ck@firegreenlaw.com)
                              104 West 40th Street, 4th Floor
                              New York, NY 10018
                              (212) 597-2255